## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF GEORGIA
## STATESBORO DIVISION

CANTRELL HILL,

       Plaintiff,

   v.

BERNARD HILL; VASHITTI BROWN; and
TERENCE KILPATRICK,

      Defendants.

CIVIL ACTION NO.: 6:20-cv-23

## REPORT AND RECOMMENDATION

    This matter is before the Court on Defendants Bernard Hill, Vashitti Brown, and Terence Kilpatrick's Motion for Summary Judgment.  Doc. 36.  The parties have fully briefed the matter. Docs. 52, 53, 64, 65.  For the following reasons, I **RECOMMEND** the Court **GRANT** Defendants' Motion for Summary Judgment, **DISMISS** Plaintiff's Complaint, **DIRECT** the Clerk of Court to **CLOSE** this case and enter the appropriate judgment, and **DENY** Plaintiff *in forma pauperis* status on appeal.

## PROCEDURAL HISTORY

    Plaintiff brought this 42 U.S.C. § 1983 action relating to his incarceration at Smith State Prison ("SSP") to challenge Defendants' policies for denying meal plans for religious accommodations.  Doc. 1.  After conducting frivolity review, the Court dismissed Plaintiff's Eighth Amendment claims for cruel and unusual punishment but permitted Plaintiff's First Amendment claim against Defendants Hill, Brown, and Kilpatrick to proceed.  Docs. 8, 10.

    Plaintiff alleges he requested a vegan diet meal plan to accommodate his religious beliefs, but Defendant Hill, a chaplain at SSP, denied Plaintiff's request.  Doc. 1 at 5.  Plaintiff is a

Muslim, and his religious practices forbid him from eating certain meat and eating certain food that has not been prepared in accordance with Islamic law (i.e., Halal foods). Id. at 6. Plaintiff explains he was denied an Alternate Entrée Meal Plan ("AEP") based on an unconstitutional policy. The policy at issue—which was used by Defendant Hill at SSP—prohibited inmates from getting a vegan or restricted vegan AEP if they had purchased non-vegan items from the commissary in the preceding six months. Id. Under this policy, Defendant Hill denied Plaintiff's request because Plaintiff purchased meat from the commissary prior to making his AEP request, and Defendants Brown and Kilpatrick supported this denial (or ignored Plaintiff's complaints about the denial). Id. at 6.

Plaintiff asserts his request for a vegan AEP was based on his sincere religious beliefs and his commissary purchases were consistent with his religious beliefs. Specifically, Plaintiff contends his purchases of fish products were not inconsistent with Halal diet requirements and he purchased summer sausage to trade with other inmates. Plaintiff claims the denial of his request for a vegan AEP violates his First Amendment rights.[1] Id. at 9. At the time of filing his Complaint, Plaintiff stated he refused to eat the non-vegan food being provided and has suffered from weight loss and psychological distress as a result. Id. at 8. As relief, Plaintiff seeks a permanent injunction and monetary damages. Id. at 10.

---

[1] Plaintiff also suggests he has a claim under the Religious Land Use and Institutionalized Persons Act ("RLUIPA"). Doc. 53 at 1–2, 9, 20–24. However, as the Court already explained, Plaintiff has not brought any RLUIPA claim in this case. Doc. 58. Further, even if an RLUIPA claim had been asserted, it would fail. RLUIPA does not permit monetary damages and Plaintiff's claims for injunctive relief are moot, as described herein. Sossamon v. Texas, 563 U.S. 277, 282 (2011). Similarly, Plaintiff argues Defendant Hill violated Plaintiff's Fourteenth Amendment due process rights. Doc. 52 at 2. However, Plaintiff did not plead a Fourteenth Amendment due process claim, and he was not permitted to proceed on such a claim following frivolity review. Docs. 8, 10, 11. Thus, the Court will not address any arguments for relief under RLUIPA or purported violations of Plaintiff's Fourteenth Amendment rights further.

**UNDISPUTED MATERIAL FACTS**

Local Rule 56.1 of the Southern District of Georgia provides a party moving for summary judgment must include "a separate, short, and concise statement of the material facts as to which it is contended there exists no genuine dispute to be tried as well as any conclusions of law thereof." Local R. 56.1. Defendants submitted a Statement of Material Fact in support of their Motion for Summary Judgment, in accordance with the Federal Rules of Civil Procedure and Local Rule 56.1. Doc. 36-1. Defendants' Statement of Material Facts ("SMF") relies on the declarations from Defendants Hill and Brown and Mary Lane Cooper, the Georgia Department of Corrections' ("GDC") Standard Operating Procedures ("SOP"), and a transcript of Plaintiff's deposition. Docs. 36-3 to 36-7.

## I.    Plaintiff's Response to Defendants' SMF

Plaintiff filed a Response to Defendants' SMF, in which he specifically admits or denies each enumerated fact from Defendants' SMF. Doc. 53. The facts Plaintiff admits are considered true for purposes of summary judgment. <u>Scoggins v. Arrow Trucking Co.</u>, 92 F. Supp. 2d 1372, 1373 n.1 (S.D. Ga. 2000) (finding, under Local Rule 56.1 and Eleventh Circuit precedent, "all unopposed fact statements supported by the evidentiary materials of record are deemed admitted").

Plaintiff objects to or denies Defendants' factual allegations in paragraphs numbered: 6, 10, 11, 13, 14, 16, 17, 19, 20, 23, 24, 26, 28, 32, 33, 41, 49, 53, and 54. Some of Plaintiff's responses to these paragraphs fail to point to anything in the record which would controvert the fact, and his other responses are simply unresponsive to the fact being asserted. This is true for Plaintiff's responses to paragraphs 13, 14, 16, 17, 26, 28, 41, 49, 53, and 54. For the paragraphs where Plaintiff fails to show a material dispute or his responses are not responsive to the asserted

fact, the fact is deemed admitted.  Williams v. Slack, 438 F. App'x 848, 849–50 (11th Cir. 2011) (finding no error in deeming defendants' material facts admitted where pro se prisoner failed to respond with specific citations to evidence and otherwise failed to state valid objections); A.M.R. ex rel. Reagin v. Glynn County, No. CV 211-003, 2012 WL 6608754, at *1 n.1 (S.D. Ga. Dec. 18, 2012) ("[M]erely stating that a paragraph is controverted is insufficient to actually do so.").  Therefore, paragraphs 13, 14, 16, 17, 26, 28, 41, 49, 53, and 54 are deemed admitted.

The facts in paragraphs 10, 11, 19, 20, 23, 24, 32, and 33 should also be considered as true for the purposes of summary judgment.  Plaintiff makes the same objection to all of these paragraphs.  Doc. 53.  Regardless of the facts alleged in these paragraphs, Plaintiff asserts in response that Defendant Hill denies AEP applications "for reasons unrelated to religious sincerity of prisoners" and that Defendant Hill cannot judge religious sincerity based on the purchase of non-vegan foods and because he is not a Muslim.  Id. at 3.  Plaintiff does not provide evidentiary support for these assertions besides the fact Defendant Hill is not Muslim.[2] Plaintiff's repeated response does not controvert Defendants' factual allegations.  For example, in paragraph 24, Defendants state: Defendant Hill only considered commissary purchases made within six months of the application being reviewed and did not permanently bar anyone from the program.  Doc. 53 at 9; Doc. 36-1 at 5.  In response, Plaintiff states Defendant Hill denies AEP for reasons unrelated to religious sincerity and that the measure of sincerity—commissary purchases—is improper.  Doc. 53 at 9.  But Plaintiff's response in unsupported by the record and

---

[2]    Plaintiff cites to paragraphs 16 through 29 of his statement of material facts attached to his own motion for summary judgment.  Doc. 53 (citing Doc. 51-2 at 4–7).  This section of Plaintiff's statement of material facts addresses tenets of Islam, his beliefs as a Muslim, and his explanation for purchasing non-vegan commissary food.  Id.  However, this has little to do with the assertions in Defendants' SMF.

does not meaningfully controvert Defendants' assertion that Defendant Hill considered commissary purchases and did not permanently bar anyone from the program.[3]

Plaintiff's objection to paragraph six of Defendants' SMF is different but also fails to controvert Defendants' factual allegation.  Doc. 53 at 6.  Paragraph six explains the GDC has an SOP aimed at meeting the needs of inmates whose sincerely held religious beliefs include dietary restrictions.  Doc. 36-1 at 2.  In response, Plaintiff denies the fact because Plaintiff believes the AEP SOP does not properly accommodate an Islamic Halal diet.  Doc. 53-1 at 2.  However, paragraph six of the SMF does not address whether a Halal diet is provided; instead, it merely describes the goal of the GDC policy, which Plaintiff does not address in his response.[4]  Thus, paragraph should also be deemed admitted for purposes of summary judgment.

---

[3]     Another example is Plaintiff's response to paragraph 11 of Defendants' SMF.  Paragraph 11 states the facility's security interests should be considered when evaluating AEP applications.  Doc. 36-1 at 3.  Plaintiff's response only addresses whether lack of religious sincerity is used as pretext for denying AEP applications and whether a Muslim can eat non-vegan food.  Doc. 53 at 3–4.  It in no way refutes, or even addresses, whether "applications are to be evaluated in the context of the security interests of the facility housing the inmate."

[4]     Whether a vegan meal properly accommodates a Halal diet is not related to claims before the Court.  Plaintiff suggests he also brought a First Amendment claim based on the GDC's failure to offer a non-vegan Halal diet option that includes Halal meats and dairy.  See Doc. 52 at 3; Doc. 53 at 2.  Plaintiff suggests GDC's policy only providing vegan meals, instead of more extensive Halal meals (i.e., ones that include Halal-compliant meat or dairy products), violates his First Amendment rights.  Despite his assertions now, Plaintiff's Complaint contains no such claim, and the Court did not recognize such a claim in conducting frivolity review.  Doc. 8.  The factual allegations in Plaintiff's Complaint relate exclusively to him being denied a vegan diet at SSP.  Doc. 1 at 5–9.  Plaintiff's factual assertions do not support a broader claim challenging the GDC's lack of broader non-vegan Halal meals.  Further, Plaintiff did not name as a Defendant any individual who would have been responsible for the GDC's policy of not offering non-vegan Halal meals, such as the GDC Commissioner.  Even if Plaintiff had asserted that claim, the claim would fail.  See, e.g., Shepard v. Peryam, 657 F. Supp. 2d 1331, 1355 (S.D. Fla. 2009) ("[C]ourts have held that for Muslim inmates a jail or prison need only provide a pork free diet, and that a Kosher diet or Halal meals are not required[.]") (collecting cases).

## II.     Undisputed, Material Facts

Given these circumstances, and after reviewing the parties' submissions and the entire record, the Court identifies the following undisputed, material facts for the purposes of evaluating Defendants' Motion for Summary Judgment:[5]

### A.     Relevant GDC Policies

At all relevant times, Plaintiff was a state prisoner incarcerated at SSP, a GDC facility. Doc. 36-1 at 1.  Defendant Hill was the Chaplain at SSP, Defendant Brown was the Deputy Warden of Care and Treatment at SSP, and, until October 1, 2019, Defendant Kilpatrick was the Warden at SSP.  Id. at 1–2.  SSP is a Georgia state prison which follows GDC's SOP regarding religious accommodations.  Id. at 2.  Under the SOP, inmates may request assignment to an AEP diet, which includes a vegan diet or a restricted vegan diet, by filling out specific forms.  Id. Inmates are only approved to join the AEP if they are doing so based on a sincerely held religious belief.  Id.  A warden, or his designee, evaluates AEP applications.  Id.  The SOP provides non-exhaustive guidelines for evaluating an application, but approval is ultimately left to the warden or his designee.  Id.  Because not all GDC facilities can provide a vegan or restricted vegan diet, inmates who start an AEP will sometimes have to be transferred to a different facility.  Id.  SSP cannot provide AEP meals, so if any SSP inmate at that facility is approved for an AEP, he must be transferred to another facility.  Id. at 6, 8.

### B.     AEP Requests at SSP

At SSP, Defendant Hill was designated to review AEP applications submitted by inmates at SSP.  Id. at 8.  In reviewing the applications, Defendant Hill was required to ensure the

---

[5]     The facts recited here represent the facts in the record and draw all reasonable inferences in the light most favorable to Plaintiff, the non-moving party.  Peppers v. Cobb County, 835 F.3d 1289, 1295 (11th Cir. 2016).

6

applications met the AEP SOP's requirements, which only allow inmates to participate based on sincere religious beliefs.  Id. at 4.  If Defendant Hill approved applications that were not based on sincere religious beliefs, SSP and GDC would be faced with a significant logistical burden, given the large number of applications Defendant Hill received.  Id.  Once an AEP is approved and a transfer is required, the GDC Central Office must still approve and finalize SSP's request to transfer an inmate.  Id. at 6.

To gauge sincerity, Defendant Hill considered an applying inmate's conduct.  Id. Defendant Hill did this by maintaining an internal, unwritten policy of reviewing an inmate's purchases from SSP's commissary.  Id. at 4.  At the commissary, inmates can purchase food separate and apart from the food provided in their meal plan.  Id.  Defendant Hill looked at purchases at the commissary to see if an applying inmate had purchased food that violated his purported religious dietary restrictions.  Id.  If Defendant Hill saw a recent purchase of a meat product, he used this as an indicator an application for a vegan or restricted vegan diet was not made pursuant to a sincere religious belief.  Id. at 5.  Defendant Hill used commissary purchases as a proxy for sincerity because the purchases were optional.  Id. at 4–5.  Defendant Hill only considered purchases for the six months preceding the application, and inmates were permitted to reapply.[6]  Id. at 5.

### C.    Plaintiff's AEP

Plaintiff is a Muslim and applied for a restricted vegan AEP on June 10, 2019.  Id. Defendant Hill denied Plaintiff's application because he did not believe it was based on a sincerely held religious belief.  Id at 6.  Defendant Hill based his denial on the fact Plaintiff had

---

[6]    Defendant Hill's own policy for gauging sincerity is consistent with the GDC AEP policy for removing an inmate from an AEP.  Under the GDC SOPs, an inmate can be removed from a vegan AEP for buying non-vegan items from the commissary.  Doc. 36-4 at 11.

purchased meat products from the SSP commissary in the preceding six months.  Id.  Plaintiff filed two grievances related to the denial of his AEP application, which Defendants Brown and Kilpatrick reviewed and ultimately denied.  Id.

On September 11, 2019, Plaintiff reapplied for the restricted vegan meal plan.  Id. Defendant Hill again assessed Plaintiff's application and reviewed his commissary records, which showed Plaintiff had not purchased any meat products at the commissary for the preceding six months.  Id.  At this point, Defendant Hill believed Plaintiff's application to be sincere and approved his application.  Id.  Defendant Hill notified Defendant Brown Plaintiff needed to be transferred to accommodate his vegan diet.  Id.  Defendants took all necessary steps to accommodate Plaintiff's dietary needs based on his sincerely held religious beliefs.  Id. at 8.  At this point in the process, the GDC Central Office and its officials must approve Plaintiff's transfer to a new facility.  Id.  Defendants Brown, Hill, and Kilpatrick have no authority to compel or force a transfer of Plaintiff or any other inmate.  Id.

## DISCUSSION

### I.    Legal Standard

Summary judgment "shall" be granted if "the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  "A dispute about a material fact is genuine and summary judgment is inappropriate if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.  However, there must exist a conflict in substantial evidence to pose a jury question."  Hall v. Sunjoy Indus. Grp., Inc., 764 F. Supp. 2d 1297, 1301 (M.D. Fla. 2011) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986), and Verbraeken v. Westinghouse Elec. Corp., 881 F.2d 1041, 1045 (11th Cir. 1989)).  "If the evidence [produced by the

nonmoving party] is merely colorable or is not significantly probative summary judgment must be granted." Anderson v. Liberty Lobby, Inc., 477 U.S. 242 at 249 (1986) (citations omitted).

The moving party bears the burden of establishing there is no genuine dispute as to any material fact and that he is entitled to judgment as a matter of law. See Williamson Oil Co., Inc. v. Philip Morris USA, 346 F.3d 1287, 1298 (11th Cir. 2003). Specifically, the moving party must identify the portions of the record which establish there are no "genuine dispute[s] as to any material fact and the movant is entitled to judgment as a matter of law." Moton v. Cowart, 631 F.3d 1337, 1341 (11th Cir. 2011). When the nonmoving party would have the burden of proof at trial, the moving party may discharge his burden by showing the record lacks evidence to support the nonmoving party's case or the nonmoving party would be unable to prove his case at trial. See id. (citing Celotex v. Catrett, 477 U.S. 317, 322–23 (1986)). Once the party moving for summary judgment satisfies its initial burden, the burden shifts to the non-moving party to come forward with specific facts showing a genuine dispute for trial. Hinson v. Bias, 927 F.3d 1103, 1115 (11th Cir. 2019). In determining whether a summary judgment motion should be granted, a court must view the record and all reasonable inferences that can be drawn from the record in the light most favorable to the nonmoving party. Peek-A-Boo Lounge of Bradenton, Inc. v. Manatee County, 630 F.3d 1346, 1353 (11th Cir. 2011).

## II.   Qualified Immunity Bars Plaintiff's Claims for Monetary Damages

Defendants argue they are entitled to qualified immunity because they were performing discretionary functions as government officials and their conduct did not violate "clearly established law." Doc. 36-2 at 16–19; Doc. 65 at 10–11. Plaintiff, on the other hand, contends Defendants violated clearly established law. Doc. 52 at 25–26. However, Plaintiff does not contest Defendants were performing discretionary duties. Id.

"The qualified immunity doctrine protects an [official] unless at the time of the [official's] supposedly wrongful act the law 'was already established to such a high degree that every objectively reasonable' [official] in his place 'would be on notice' that what he was doing was 'clearly unlawful given the circumstances.'" Powell v. Snook, 25 F.4th 912, 920 (11th Cir. 2022) (citing Pace v. Capobianco, 283 F.3d 1275, 1282 (11th Cir. 2002)).  Qualified immunity shields "government officials performing discretionary functions . . . from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982); see also Lee v. Ferraro, 284 F.3d 1188, 1193–94 (11th Cir. 2002).  "The purpose of this immunity is to allow government officials to carry out their discretionary duties without the fear of personal liability or harassing litigation . . . ." Lee, 284 F.3d at 1194.

"As a result, qualified immunity shields from liability 'all but the plainly incompetent or one who is knowingly violating the federal law.'" Powell, 25 F.4th at 920 (quoting Terrell v. Smith, 668 F.3d 1244, 1250 (11th Cir. 2012)).  Additionally, "[b]ecause qualified immunity is only a defense to personal liability for monetary awards resulting from government officials performing discretionary functions, qualified immunity may not be effectively asserted as a defense to a claim for declaratory or injunctive relief." Ratliff v. DeKalb County, 62 F.3d 338, 340 n.4 (11th Cir. 1995).

To receive qualified immunity, government officials must first establish they were acting within their discretionary authority during the events in question. Maddox v. Stephens, 727 F.3d 1109, 1120 (11th Cir. 2013).  Discretionary authority includes all actions of a governmental official that "(1) were undertaken pursuant to the performance of his duties, and (2) were within the scope of his authority." Dang ex rel. Dang v. Sheriff, Seminole Cnty., 871 F.3d 1272, 1279

(11th Cir. 2017) (citing Rich v. Dollar, 841 F.2d 1558, 1564 (11th Cir. 1988)).  Here, Plaintiff

does not contest Defendants were acting within their respective discretionary authorities.  Indeed,

it is undisputed Defendants were acting as correctional staff at SSP at the time of the events in

question and in making the policy.  The record demonstrates Defendants' actions were

undertaken pursuant to the performance of their duties and were within the scope of their

authority.  Doc. 36-2 at 16.

Because Defendants were acting within their discretionary authority, the burden shifts to

Plaintiff to show qualified immunity does not apply.  Powell, 25 F.4th at 920 (citing Terrell, 668

F.3d at 1250).  "Qualified immunity protects government officers acting within their

discretionary authority from liability for civil damages unless a plaintiff can show (1) that the

officer violated a federal statutory or constitutional right, and (2) that the unlawfulness of the

officer's conduct was clearly established at the time."  Wade v. Daniels, No. 18-12371, 2022 WL

2115325, at *2 (11th Cir. June 13, 2022) (citing Williams v. Aguirre, 965 F.3d 1147, 1156 (11th

Cir. 2020)).  In determining whether qualified immunity applies, a court has discretion in

deciding which prong of this inquiry to address first.  Pearson v. Callahan, 555 U.S. 223, 232

(2009).  The unlawfulness of an officer's conduct is "clearly established" at the time of the

conduct if: "(1) a case with facts materially similar has been decided by the United States

Supreme Court, the Eleventh Circuit, or the applicable state supreme court before the challenged

conduct; (2) a broader, clearly established principle controls the facts of the situation; or (3) the

conduct so obviously violates the [C]onstitution that prior case law is unnecessary."  Wade, 2022

WL 2115325, at *2 (citing Gaines v. Wardynski, 871 F.3d 1203, 1208 (11th Cir. 2017)).

Ultimately, some established law must have provided the officers with "fair warning" their

conduct was unconstitutional.  Id. (citing Sebastian v. Ortiz, 918 F.3d 1301, 1311 (11th Cir. 2019)).

In this case, the Court finds it appropriate to address the second prong first—namely, whether the unlawfulness of Defendants' conduct was clearly established at the time of the alleged conduct.  The specific conduct at issue is Hill's use of commissary purchases as a proxy to gauge religious sincerity and assess AEP applications.[7]  Therefore, the precise question concerns whether a prison may look to commissary purchases to gauge religious sincerity.

As explained above, the burden is on Plaintiff to demonstrate the unlawfulness of Defendants' conduct was clearly established at the time of the alleged violation.  See Pearson, 555 U.S. at 232.  Plaintiff argues a prisoner's right to a religious diet is clearly established.  But it is well established general propositions—like the one relied on by Plaintiff—are typically not enough to overcome qualified immunity.  Corbitt v. Vickers, 929 F.3d 1304, 1316 (11th Cir. 2019) (holding the district court erred when relying on a general proposition to clearly establish excessive force is unconstitutional).

Instead, Plaintiff needs to show there is binding caselaw that clearly establishes Defendants' conduct was unlawful.  See Plumhoff v. Rickard, 527 U.S. 765, 780 (2014) ("[R]espondent has not pointed us to any case—let alone a controlling case or a robust consensus of cases . . . that could be said to have clearly established the unconstitutionality of using lethal force to end a high-speed car chase.").  Plaintiff fails to meet this burden.  Despite filing a lengthy response to Defendants' Motion, he devotes only a single paragraph to showing the law was clearly established and cites to only three cases to show the right was clearly established—

---

[7]      Plaintiff also challenges Defendant Brown and Kilpatrick's denial of Plaintiff's grievances concerning Hill's policy and disregard of Plaintiff's complaints about the policy.  Plaintiff's claims against Brown and Kilpatrick necessarily flow from Plaintiff's claim against Defendant Hill, and, therefore, separate analysis of the claims against Defendant Brown and Kilpatrick is unnecessary.

United States v. Sec'y, Fla. Dep't of Corr., 828 F.3d 1341, 1346 (11th Cir. 2016), Rich v. Fla. Dep't of Corr., 716 F.3d 525, 528 (11th Cir. 2013), and United States v. Sec'y, Fla. Dep't of Corr., 778 F.3d 1223 (11th Cir. 2015). Doc. 52 at 25. All the cases Plaintiff cites involve the Religious Land Use and Institutionalized Person Act ("RLUIPA"). These cases do not address an inmate's rights under the First Amendment. For example, in Sec'y Fla. Dep't of Corr., 828 F.3d 1346, the court addressed whether RLUIPA "requires the Secretary [of the Florida Department of Corrections] to accommodate inmates with a sincere religious basis for keeping kosher." The Eleventh Circuit did not address an inmate's rights under the First Amendment at all. Additionally, that case involved a policy where no kosher meals were served, whereas here, SSP approves inmates for an appropriate meal plan so long as the request is based on a sincere religious belief. Doc. 36-1 at 2. Likewise, Rich, 716 F.3d at 528, and Sec'y Fla. Dep't of Corr., 778 F.3d at 1223, both dealt with whether the Florida Department of Corrections' failure to provide any kosher meals violated RLUIPA. Again, neither of those cases dealt with the First Amendment. More importantly, neither case addressed a policy like Defendant Hill's that denied inmates admission into a specialized meal program based on a lack of sincerely held religious beliefs, as demonstrated by commissary purchases or for any other reason. The cases Plaintiff cites do not satisfy his burden, and, therefore, Defendants are entitled to qualified immunity.

To be clear, the Court has not identified any cases clearly establishing the unlawfulness of Defendants' conduct or even considering conduct like Defendants' actions in this case—using commissary purchases as a proxy to judge the sincerity of a prisoner's stated religious beliefs. Courts have concluded prisoners generally have a right to a diet which accommodates their sincere religious beliefs. Hathcock v. Cohen, 287 F. App'x 793, 801 (11th Cir. 2008) ("A jail

should accommodate an inmate's religious dietary restrictions, subject to budgetary and logistical limitations, but only when the belief is 'truly held.'"); Swetokos v. Allen, No. 09-10085-CIV, 2010 WL 2721846 at *4 (S.D. Fla. June 7, 2010) ("Courts, generally, have found that to deny inmates food that satisfies the dictates of their religion unconstitutionally burdens their right to free exercise of their faith.") (collecting cases).  But prison officials may question the sincerity of inmates' religious beliefs and may deny requests for specialized diets based on purported religious beliefs where there is reason to doubt the inmate's sincerity without running afoul of the Constitution.  See Hathcock, 287 F. App'x at 801 (affirming grant of summary judgment to defendants on qualified immunity defense to First Amendment claim, where plaintiff requested a special diet to accommodate his religious beliefs and chaplain denied the request based on his inability to confirm the sincerity of plaintiff's beliefs); Jackson v. Mann, 196 F.3d 316, 320 (2d Cir. 1999) (holding prison officials may inquire into the sincerity of an inmate requesting kosher meals); McElyea v. Babbitt, 833 F.2d 196, 198 (9th Cir. 1987) ("It is appropriate for prison authorities to deny a special diet if an inmate is not sincere in his religious beliefs.").[8]

---

[8]     Courts have also considered prison policies for specialized meal programs meant to accommodate religious diets where the policy has nothing to do with the sincerity of an inmate's religious beliefs.  Even in those contexts, where non-compliance with the policy results in an inmate's exclusion from the program, courts have concluded there is no clearly established law that such policies (and actions taken in accordance with those policies) are unlawful.  See, e.g., Andrews v. Moore, No. 3:15-CV-881, 2018 WL 1470328, at *8 (M.D. Fla. Mar. 26, 2018) (concluding defendant was entitled to qualified immunity on First Amendment claim where defendant suspended plaintiff from religious diet program based on non-compliance with program rules, where plaintiff improperly took food items from dining facility); Smith v. Barrow, No. CV 311-044, 2013 WL 6284406, at *7 (S.D. Ga. Dec. 4, 2013) (concluding there was no factually analogous case where an inmate was denied meals in accordance with religious beliefs based on the inmate's failure to complete required forms for admission to special meal program).  These cases demonstrate admission and participation requirements for specialized diet programs are not clearly unlawful, even when they result in exclusion from a program designed to accommodate religious beliefs.  Similarly, it is not clearly established Defendant Hill's screening policy considering historical commissary purchases is unlawful.

14

Defendant Hill used commissary purchases to evaluate sincerity when evaluating AEP applications.  Though Plaintiff challenges this policy as unconstitutional, he has not shown Defendants violated clearly established law by using this procedure.  The Court has not identified any cases which would clearly establish the use of commissary purchases to gauge sincerity violates clearly established law.  In fact, as noted above, the law is clear that prison officials may question the sincerity of an inmate's beliefs in determining whether an accommodation is necessary and may implement procedures to assess sincerity.  Nothing in the law suggests Defendants should have been on notice they were violating clearly established law when Defendant Hill used commissary purchases to assess the sincerity of Plaintiff's purported religious beliefs.  Therefore, qualified immunity bars Plaintiff's claims against Defendants, and Defendants are entitled to summary judgment on Plaintiff's First Amendment claims against them for monetary damages.[9]

## III.    Plaintiff's Claims for Injunctive Relief

Plaintiff requests a permanent injunction requiring Defendants be removed from their positions at SSP and to stop enforcing the illegal policy against him (i.e., approve his AEP application and accommodate his dietary request).  Doc. 1 at 10.  Defendants move for summary judgment on Plaintiff's claims for injunctive relief.  Doc. 36-2 at 19–20.  Defendants argue Plaintiff's claims for injunctive and declaratory relief should be dismissed because his claims are moot, as Defendant Hill approved Plaintiff's AEP for a restricted vegan diet and the Court does not have the authority to fire state employees.

---

[9]    The Court declines to address whether Defendants' conduct violated Plaintiff's First Amendment rights, because, even if there were a violation, Plaintiff fails to meet his burden in showing the unlawfulness of Defendants' conduct was clearly established.

Plaintiff does not present any specific response to Defendants' argument.  Plaintiff insists he has asserted claims for injunctive relief and these claims are against Defendants in their official capacities.  Doc. 53 at 8–9.  Plaintiff does not address whether his claims are moot based on Defendant Hill approving his AEP application and Defendants taking the steps to get him transferred, even though the transfer has not yet occurred.

### A.    Plaintiff's Claim for Declaratory and Injunctive Relief Should Be Dismissed

Plaintiff's request for injunctive and declaratory relief in the form of AEP approval is moot.  The undisputed material facts show Plaintiff re-applied for an AEP based on his Muslim faith on September 19, 2019.  Doc. 36-1 at 6; Doc. 52 at 12.  Defendant Hill approved the September 19, 2019 application and notified Defendant Brown Plaintiff needed to be transferred to a facility to accommodate his dietary needs.  Doc. 36-1 at 6; Doc. 52 at 13.  Defendant Brown then notified Defendant Kilpatrick, Defendant Kilpatrick's replacement, and SSP's regional director.  Doc. 36-1 at 6; Doc. 52 at 13.

Because Plaintiff has already received the injunctive relief he seeks—approval of his AEP request—his claim for injunctive relief is moot.  Miccosukee Tribe of Indians of Fla. v. United States, 259 F. Supp. 2d 1237, 1243 (S.D. Fla. 2003), aff'd sub nom., Miccosukee Tribe v. United States, 103 F. App'x 666 (11th Cir. 2004) (dismissing a claim for injunctive relief as moot where the plaintiff "already received the injunctive relief requested"); Pratt v. Thomas, No. 2:12-CV-52, 2012 WL 1252841, at *2 (M.D. Ala. Mar. 20, 2012), report and recommendation adopted, 2012 WL 1252707 (M.D. Ala. Apr. 13, 2012) ("[Plaintiff] has received the requested relief—alleviation from the conditions present in the prison system.  Consequently, any request for injunctive or declaratory relief is subject to dismissal as moot.").

Similarly, Plaintiff's claim for declaratory judgment is moot based on the approval of his AEP.  The Declaratory Judgment Act provides a declaratory judgment may be issued only in the case of an "actual controversy."  See Emory v. Peeler, 756 F.2d 1547, 1551–52 (11th Cir. 1985).  "The continuing controversy may not be conjectural, hypothetical, or contingent; it must be real and immediate, and create a definite, rather than speculative threat of future injury."  Id. at 1552. (internal quotations omitted).  A request for declaratory judgment is moot if the challenged action has no continuing adverse effects on the parties.  Super Tire Eng'g Co. v. McCorkle, 416 U.S. 115, 122 (1974).  Here, as Plaintiff's AEP request has been approved, there is no continuing controversy, and the initial denial of Plaintiff's AEP has no continuing adverse effects on the parties.  Simply put, Plaintiff's request for declaratory judgment is moot because he has already been approved for an AEP.  Robbins v. Robertson, 782 F. App'x 794, 800 (11th Cir. 2019).

The Court recognizes Plaintiff has not started receiving a restricted vegan meal plan because he has not been transferred.  But Plaintiff has not sued any individuals who can provide him with such relief.  Defendants took all necessary steps to accommodate Plaintiff's dietary needs based on his sincerely held religious beliefs.  Doc. 36-1 at 8; Doc. 52 at 15–16.  At this point, only non-parties—the GDC Central Office and its officials—can transfer Plaintiff to a new facility.  Doc. 36-1 at 8; Doc. 52 at 15–16.  Defendants Brown, Hill, and Kilpatrick have no authority in their individual or official capacities to transfer, compel, or force a transfer of Plaintiff or any other inmate.  Doc. 36-1 at 8; Doc. 52 at 15–16.

Plaintiff insists because he sued Defendants in their official capacities, his Complaint should also be construed to sue the State of Georgia, the GDC, and the GDC's Commissioner. Doc. 53 at 8–9.  This is incorrect.  There is no indication Plaintiff ever intended to sue these other entities and individuals.  Throughout his Complaint, Plaintiff lists Defendants Brown, Hill,

and Kilpatrick as the only Defendants.  Doc. 1 at 1, 4, 10, 11.  Moreover, at the time Plaintiff

filed his Complaint, there was no indication Defendants could not provide the injunctive relief he

sought—approval of his AEP—or that the State of Georgia, the GDC, and the GDC's

Commissioner were necessary parties to provide this relief.  Indeed, Plaintiff alleges the

purportedly unconstitutional policy is a SSP policy, not a GDC policy.  Id. at 5–8.  While

Plaintiff is entitled to liberal construction of his Complaint, he is not entitled to amend his

Complaint to raise new claims in response to summary judgment.  Gilmour v. Gates, McDonald

& Co., 382 F.3d 1312, 1315 (11th Cir. 2004) ("[A] plaintiff may not amend [his] complaint

through argument in a brief opposing summary judgment" as "the proper procedure for plaintiffs

to assert a new claim" at the summary judgment stage "is to amend the complaint in accordance

with [Rule 15(a)].").

**B.     Plaintiff's Claim for Injunctive Relief Related to Defendants' Employment Fails**

Plaintiff asks the Court to terminate Defendants from their positions.  Defendants move

for summary judgment on this request.  Doc. 36-2 at 20.  First, Defendant Kilpatrick has retired.

Doc. 36-1 at 8.  Second, even if all Defendants were still employees of the State of Georgia, the

Court cannot grant Plaintiff's requested relief, as "federal courts have no authority to . . . to fire

state employees."  Newman v. Alabama, 559 F.2d 283, 288 (5th Cir. 1977), *rev'd on other*

*grounds, sub nom.*, Alabama v. Pugh, 438 U.S. 781 (1978).  Third, Plaintiff has made no

showing whatsoever supporting the relief requested.  Defendants are entitled to summary

judgment on this claim for injunctive relief.

Thus, Defendants are entitled to summary judgment on Plaintiff's claims for monetary

damages and his claims for declaratory or injunctive relief.  Accordingly, I **RECOMMEND** the

Court **GRANT** Defendants' Motion for Summary Judgment, as Plaintiff's claims for monetary and injunctive relief fail.

## IV.   Leave to Appeal *in Forma Pauperis*

The Court should also deny Plaintiff leave to appeal *in forma pauperis*. Though Plaintiff has not yet filed a notice of appeal, it is proper to address these issues now. See Fed. R. App. P. 24(a)(3) (trial court may certify appeal of party proceeding *in forma pauperis* is not taken in good faith "before or after the notice of appeal is filed").

An appeal cannot be taken *in forma pauperis* if the trial court certifies the appeal is not taken in good faith. 28 U.S.C. § 1915(a)(3); Fed. R. App. P. 24(a)(3). Good faith in this context must be judged by an objective standard. Busch v. County of Volusia, 189 F.R.D. 687, 691 (M.D. Fla. 1999). A party does not proceed in good faith when he seeks to advance a frivolous claim or argument. See Coppedge v. United States, 369 U.S. 438, 445 (1962). A claim or argument is frivolous when it appears the factual allegations are clearly baseless or the legal theories are indisputably meritless. Neitzke v. Williams, 490 U.S. 319, 327 (1989); Carroll v. Gross, 984 F.2d 392, 393 (11th Cir. 1993). Thus, a claim is frivolous and not brought in good faith if it is "'without arguable merit either in law or fact.'" Moore v. Bargstedt, 203 F. App'x 321, 323 (11th Cir. 2006) (quoting Bilal v. Driver, 251 F.3d 1346, 1349 (11th Cir. 2001); see also Brown v. United States, Nos. 407CV085, 403CR001, 2009 WL 307872, at *1–2 (S.D. Ga. Feb. 9, 2009).

Based on the above analysis of Plaintiff's claims and Defendants' Motion for Summary Judgment, there are no non-frivolous issues to raise on appeal, and an appeal on these claims would not be taken in good faith. Thus, the Court should **DENY** Plaintiff *in forma pauperis* status on appeal.

**CONCLUSION**

Because Defendants are entitled to qualified immunity and Plaintiff's injunctive relief claims are due to be dismissed, I **RECOMMEND** the Court **GRANT** Defendants' Motion for Summary Judgment, **DISMISS** Plaintiff's Complaint, **DIRECT** the Clerk of Court to **CLOSE** this case and enter the appropriate judgment, and **DENY** Plaintiff *in forma pauperis* status on appeal.

Any objections to this Report and Recommendation shall be filed within 14 days of today's date. Objections shall be specific and in writing. Any objection that the Magistrate Judge failed to address a contention raised in the Complaint or other filing must be included. Failure to file timely, written objections will bar any later challenge or review of the Magistrate Judge's factual findings and legal conclusions. 28 U.S.C. § 636(b)(1)(C); Harrigan v. Metro Dade Police Dep't Station #4, 977 F.3d 1185, 1192–93 (11th Cir. 2020). To be clear, a party waives all rights to challenge the Magistrate Judge's factual findings and legal conclusions on appeal by failing to file timely, written objections. Harrigan, 977 F.3d at 1192–93; 11th Cir. R. 3-1. A copy of the objections must be served upon all other parties to the action.

Upon receipt of Objections meeting the specificity requirement set out above, a United States District Judge will make a de novo determination of those portions of the report, proposed findings, or recommendation to which objection is made and may accept, reject, or modify in whole or in part, the findings or recommendations made by the Magistrate Judge. Objections not meeting the specificity requirement set out above will not be considered by a District Judge. A party may not appeal a Magistrate Judge's report and recommendation directly to the United States Court of Appeals for the Eleventh Circuit. Appeals may be made only from a final

judgment entered by or at the direction of a District Judge.

**SO REPORTED and RECOMMENDED**, this 24th day of June, 2022.

BENJAMIN W. CHEESBRO
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA